Richard M. LADE, Attorney in fact for the Santa Fe Pacific Railroad Company, Plaintiff-Appellant,

v.

The Honorable Stewart L. UDALL, Secretary of the Interior of the United States, Defendant-Appellee.

No. 23355.

United States Court of Appeals, Ninth Circuit.

Sept. 25, 1970.

William B. Murray, Portland, Or., for plaintiff-appellant.

Sidney I. Lezak, U. S. Atty., Jack G. Collins, Asst. U. S. Atty., Portland, Or., Shiro Kashiwa, Asst. Atty. Gen., Lands Dept., Edmund B. Clark and Jonathan I. Charney, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before MADDEN, Judge of the United States Court of Claims, and MERRILL and TRASK, Circuit Judges.

MERRILL, Circuit Judge.

Appellant seeks review of an administrative decision of the Secretary of the Interior rejecting his claim of right to the selection of public lands in lieu of forest lands relinquished to the United States by the Santa Fe Pacific Railroad Company. The District Court ruled in favor of the Secretary on the authority of this court's decision in Udall v. Battle Mountain Company, 385 F.2d 90 (9th Cir. 1967). Here, as in that case, appellant claimed his lieu rights as assignee of Santa Fe; the United States had, on request of Santa Fe, reconveyed to it the base lands earlier relinquished by it and contends that the right to selection of lieu lands was extinguished by that reconveyance. We agree with the District Court that *Battle Mountain* controls and that any rights to lieu selection were extinguished by the reconveyance of the base lands.

Appellant would distinguish *Battle Mountain* in this: In that case the power of attorney held by the assignee was not recorded until after the United States had reconveyed to the railroad; here the power of attorney had been recorded prior to reconveyance. We find no merit in this distinction. The holding in *Battle Mountain* was that the United States was not required to recognize assignments or assignees of lieu rights and could properly insist on dealing only with the relinquishor of the base lands. We further held that recording of assignments or powers of attorney, pursuant to the Recording Act of 1955, created no new obligation on the part of the United States to respect assignments so recorded or to deal with the assignees.

Appellant urges us to re-examine *Battle Mountain* in the light of background information he here furnishes respecting the 1897 Act (that which first provided for the acquisition of lieu rights on relinquishment of forest lands). Appellant is to be commended for an admirable discussion of the Act and its purposes and of the manner in which the Secretary has operated under it. However, we decline to re-examine *Battle Mountain*.

Under appellant's thesis,[1] instead of consistent treatment of all lieu rights arising under the 1897 Act, treatment would be made to depend on the facts of the particular relinquishment. This would, we feel, serve only to create uncertainty as to the nature of property rights in an area where certainty is greatly to be desired.

Judgment affirmed.

[1]. Appellant asserts that the 1897 Act contemplated exchange rights that would not obligate the Government until it had actually approved a lieu selection. The typical relinquishment of base lands, it is argued, thus vested no title in the United States until the exchange had been approved and accomplished. Until that time a recorded deed of base lands under the Act served simply to cloud the retained title of the relinquishor.

Appellant asserts that the relinquishment to the Government by the Santa Fe here in question was entirely different in character. Here, by contract between the Secretary and Santa Fe, the United States committed itself to accept the relinquished land and actually took title and Santa Fe's right to lieu selection became fixed. Santa Fe's rights thus were as binding on the Government as any scrip and should take the assignable attributes of scrip.

TRASK, Circuit Judge (dissenting):

Recognizing, as did the district court, the controlling effect of the decision of this court in Udall v. Battle Mountain, 385 F.2d 90 (9th Cir. 1967), I find a substantial basis for distinguishing the facts of that case from the facts of the case now before this court. On the basis of that difference, I would disagree with the majority here and decide the issue in favor of the appellant.

Pursuant to Acts of Congress, providing therefor,[1] the Santa Fe Pacific Railroad Company relinquished and conveyed to the United States certain base lands located in Arizona which Santa Fe owned. In consideration of that transfer, the United States granted to Santa Fe the right to select and receive other lands of the United States in lieu of those base lands which the United States had obtained. The government does not question the fact that it received a valid selection right. Lade is the successor in interest of that right to select lieu lands, and the holder of a power of attorney from Santa Fe authorizing him to act as Attorney in Fact for Sante Fe in exercising its selection rights.

In August of 1955 Congress enacted a statute [2] requiring "any owner of, and any person claiming rights to" select lands to present his holdings or claim for recordation by the Department of the Interior. This Recordation Act gave the owner, or claimant to a selection right two years from its effective date within which to record such right and provided that:

"In the case of a transfer after the effective date of this Act, by assignment, inheritance, operation of law, or otherwise * * *"

of such a selection right the claim should be presented to the Department of the Interior within six months after such transfer. (Section 2). Finally, Section 4 of that act provided:

"Sec. 4. Claims or holdings not presented for recordation as prescribed herein, shall not thereafter be accepted by the Secretary of the Interior for recordation *or as a basis for the acquisition of lands*." (Emphasis supplied)

In *Battle Mountain*, 385 F.2d at 96, this court has said that the principal purpose of Congress in enacting this Recording Act of 1955 was to secure information. Undoubtedly this was true. In addition, however, the Department of the Interior had a purpose beyond mere curiosity in seeking the enactment of this legislation. The Assistant Secretary of the Interior in requesting the passage of the Act, pointed out to Congress:

"This bill would enable the Department to ascertain all outstanding lieu selection or scrip rights, including boundary land warrants. An unknown amount of such rights and claims, which range from about a half to over a full century old, is in existence. * * *

"Once the amounts of the various scrips and rights which remain to be satisfied are definitely determined, the Department will be able to formulate a procedure for satisfying them. It is evident that virtually all of these old rights are now held by heirs and *assignees* of the persons to whom they were granted. * * *"[3] (Emphasis supplied)

It would thus appear that another purpose of the Act was to enable the government to "formulate a procedure for satisfying" the claims evidenced by outstanding selection rights whether in the hands of the original grantees or their heirs or assignees.

---

1. Act of June 4, 1897, ch. 1, 30 Stat. 36; Act of March 3, 1905, ch. 1495, 33 Stat. 1264.

2. Act of August 5, 1955, ch. 573, 69 Stat. 534.

3. H.R.Rep. No. 749, 84th Cong., 1st Sess. 3 (1955), recommending enactment of H. R. 2972, which became the Act of August 5, 1955, *Id.*

Mr. Lade, on May 31, 1956, duly recorded his ownership of his selection right related to the base land transferred to the United States. His action was well within the recording period.

Thereafter, and on June 27, 1956, the Director of the Bureau of Land Management without Lade's knowledge or consent quitclaimed the base lands along with other lands back to the Santa Fe Pacific Railroad Company. The government has since refused to recognize or honor the selection right which Mr. Lade holds.[4]

There are two significant facts which distinguish this case from *Battle Mountain*:

1. The record discloses that on October 6, 1955 (a date after the enactment of the Recording Act of 1955), the Santa Fe Pacific Railroad Company wrote a letter to the Chief of the Adjudication, Land Use and Disposal Section, Bureau of Land Management, Department of the Interior, Washington, D. C. Santa Fe told Interior that it had at a prior date sold this particular base land "and all rights therein" to one Hugo Seaberg and had furnished him with deeds of relinquishment of these base lands to the United States together with powers of attorney to select lieu lands and powers of attorney to convey them.

The letter concluded with a statement by Santa Fe that "to the best of our knowledge and belief" no exchange had been completed and "since the powers of attorney to select and convey have been lost", Santa Fe requested a quitclaim deed to the land in question "so that title can be cleared and confirmed to the parties entitled thereto." [5]

2. In this case Mr. Lade, pursuant to the requirements of the Recording Act of 1955, did record his ownership of the right in question on May 31, 1956. This was prior to the date upon which the Director of the Bureau of Land Management quitclaimed the base lands back to Santa Fe. In *Battle Mountain*, the base lands had been reconveyed prior to any recording of a claim existing by virtue of a power of attorney or assignment. By virtue of this letter, the government had actual notice that Santa Fe had sold this land "and all right therein", together with the selection right.

The loss of the paper evidence of the power of attorney by the rightful owner (assuming that it had been lost) does not re-vest ownership of the base lands in Santa Fe nor assign or transfer the power of attorney or selection right to Santa Fe. These rights remain with the person to whom they had been transferred. The loss of the instrument does not destroy the right. This right still exists and may be enforced, although the primary evidence thereof is obviously impaired. Bottum v. Herr, 83 S.D. 542, 162 N.W.2d 880, 884 (1968); Brewer v. Brewer, 199 Va. 753, 102 S.E.2d 303, 311 (1958); Bingham v. Weber, 197 Or. 501, 254 P.2d 219, 224 (1953).

The letter was (1) a formal acknowledgment by Santa Fe that it was not the real owner of the rights involved, and (2) formal notice to the government that those rights were outstanding in some third person.

The majority state that:

"The holding in *Battle Mountain* was that the United States was not required to recognize assignments or

---

4. Prior to filing of this action in the district court, Lade made application to the Bureau of Land Management for selection of lieu lands as Attorney in Fact for Santa Fe. Upon rejection of that application he appealed to the Secretary. The appeal was denied: A–29121 (Oregon 011228) by Ernest F. Hom, Assistant Solicitor, Land Appeals.

5. The opinion in *Battle Mountain*, 385 F. 2d at 93, contains the statement that "Santa Fe believed, apparently in good faith, that the powers of attorney had been lost." Whether the entire disclosure as stated here, was there made by Santa Fe to the government, is unclear.

assignees of lieu rights and could properly insist on dealing only with the relinquishor of the base lands."

Acknowledging that such is the controlling principle here, the fact that the United States was not *required* to recognize an assignee does not mean that the United States was *authorized* to recognize Santa Fe *after* it had parted ownership and frankly admitted as much. Similarly, the fact that the United States could properly insist on dealing only with the relinquishor of the base lands does not mean that the United States could execute and deliver to that relinquishor a quitclaim deed of the base lands in question in the face of the statement of the relinquishor that it had transferred "the lands and all rights therein", including the selection rights, to a third person.

The second fact distinguishing this case from *Battle Mountain* is that here the government conveyed the base lands to Santa Fe after the holder of the power of attorney from Santa Fe had recorded his claim in the office of the Bureau of Land Management as he was required to do under the Recording Act of 1955. The government thus not only had actual notice by letter that Santa Fe had no right to receive a quitclaim to the base lands, but it also had constructive notice pursuant to an Act of Congress. The recording data was in Interior's own office. The majority here states with respect to the controlling principle of *Battle Mountain:*

> "We further held that recording of assignments or powers of attorney, pursuant to the Recording Act of 1955, created no new obligation on the part of the United States to respect assignments so recorded or to deal with the assignees."

Again, with deference to this holding, I point out that in *Battle Mountain* the assignment *had not been recorded* at the time the government executed and delivered its quitclaim. Therefore, the issue of the effect of the Recording Act on "assignments so re-recorded" prior to conveyance was not before the *Battle Mountain* court.[6] I would hold that the Recording Act of 1955 was not a purposeless enactment. As the Assistant Secretary of the Interior stated in his explanation of the bill,

> "Once the amounts of the various scrips and rights which remain to be satisfied are definitely determined, the Department will be able *to formulate a procedure for satisfying them.*"[7] (Emphasis supplied)

While the recording of Lade's claim pursuant to statute did not create a new right for him, it constituted plain notice to the government of his ownership of the original right and a warning not to destroy it until the Department had a chance "to formulate a procedure for satisfying" it, if in fact it was valid. Selection rights for lieu lands were rights created by Act of Congress. As far as this record shows, Lade acquired his rights properly and was their legal owner. They were government-created obligations; they should be government-honored obligations. Whether the government and Santa Fe by inadvertence or design have overlooked Lade's rights he should not be forced to continue to litigate either against Santa Fe or the government or any others. As between the parties the protection should be afforded the innocent party, not the wrong-doing or negligent parties.

I would reverse and remand with directions to enter a decree directing the Secretary to determine the validity of

6. Said this court in *Battle Mountain:*
 "There can be little doubt that the Interior Department acted unwisely and perhaps contrary to the spirit of the 1955 Act in dealing with Santa Fe without waiting out the recording period." 385 F.2d at 96. Here, all the Interior Department had to do was to examine its own records prior to reconveyance to Santa Fe and it would have seen Mr. Lade's recorded claim.

7. *Supra,* note 3.

Mr. Lade's right, and if it is valid to process it as the Congress of the United States provided that it should be processed.